UNITED STATES DISTRICT COURT Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY   FILED
NORTHERN DIVISION
AT COVINGTON   SEP 2 5 2009

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 09-155-DLB

THE HENNEGAN COMPANY                                        PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

GRAPHIC COMMUNICATIONS CONFERENCE/
INTERNATIONAL BROTHERHOOD OF TEAMSTERS
LOCAL 508-OKI, ET AL.                                      DEFENDANTS

* * * * * * * * * * * * * * * * *

I.      Introduction

This case was removed from Boone Circuit Court on September 8, 2009.  Upon

reviewing Defendants' Notice of Removal and the proffered basis for removal, the Court

requested and received memoranda from the parties addressing the propriety of the

removal.  That briefing having now been completed (Docs. # 12, 16), on September 24,

2009, the Court heard oral argument on the removal and Plaintiff's request to remand for

lack of subject matter jurisdiction.[1] James U. Smith, Esq. was present on behalf of Plaintiff,

and Daniel B. Smith, Esq., David M. Cook, Esq., and Ellen Grachek, Esq. were present on

behalf of Defendants.  The proceedings were recorded by official court reporter Lisa

Wiesman.  At the conclusion of the hearing, the matter was submitted for decision.

---

[1] Included as part of Plaintiff's response was a motion to remand the case to the Boone
Circuit Court (Doc. # 12 at p. 1).

For the reasons that follow, the Court finds that Plaintiff's state law claims are not preempted by section 301 of the Labor Management Relations Act ("LMRA") in this instance. Therefore, lacking a proper legal basis for removal, the case will be remanded to Boone Circuit Court, and Defendants' motion to dissolve the TRO (Doc. # 2) will be deferred the presiding state court judge on remand.

## II.    Factual and Procedural Background

Plaintiff, the Hennegan Company, is a printing company located in Florence, Kentucky which, according to the Complaint, specializes in high-end printing and, as a result, services a small market of customers.  Plaintiff is a wholly-owned subsidiary of Consolidated Graphics, Inc., a publicly traded company.  Approximately 70% of Plaintiff's workforce is represented in collective bargaining by Graphic Communications Conference/International Brotherhood of Teamsters, Local 508 – OKI, District Council #3 ("the Union"), a Defendant in this case.  According to the Complaint, Hennegan and the Union have had a bargaining relationship for over 60 years.  On April 30, 2007, the most recent collective bargaining agreement ("CBA") between the parties expired under its own terms.

Hennegan and the Union have been unsuccessfully negotiating towards reaching a new CBA off and on for more than two years.  Unfortunately, the parties have been unable to reach an agreement as to the principle and ancillary terms of a new CBA.  In July, 2009, Hennegan declared an impasse and implemented terms and conditions at that time.  Although not specified in the record, from the actions which followed the implementation of those terms and conditions, the Union took issue with Hennegan's actions.

2

On or about August 17, 2009, Union President John Agenbroad ("Agenbroad"), Union Vice-President James Elkins ("Elkins") and Union Business Representative Chris Hancock ("Hancock") sent a letter to Hennegan customers on Union letterhead. Hennegan represents that the August 17, 2009 letter was sent to at least two of Hennegan's largest customers. A copy of that letter has been made part of the record as Exhibit A to Plaintiff's response (Doc. # 12-2). The text of the letter is as follows:

> We are writing to you on behalf of the dedicated employees of Consolidated Graphics, a national printing company with facilities throughout North America. These hard-working men and women take great pride in the products they print for customers like you. Our union, the Graphic Communications Conference of International Brotherhood of Teamsters (GCC/IBT), represents many of the company's workers, including those who work at The Hennegan Company subsidiary in Florence, Kentucky. For decades, the GCC/IBT and The Hennegan Company had good relations built on mutual respect and a concern for worker safety and exceeding the highest quality of production standards. Unfortunately, *since Consolidated Graphics bought The Hennegan Company two years ago, the company has carried out a relentless assault on the safety and rights of the workers who print your products.*
>
> *In bargaining at The Hennegan Company plant, the company has demanded eliminating the staffing provision from the contract.* The employees at the plant have told us that they believe that staffing reductions may lead to serious injuries as employees working large printing presses are stretched thin and could result in a lower quality of work. The workers understand that these are difficult economic times for everyone and are willing to take dramatic reductions in wages and benefits. But, they are not willing to compromise on worker safety and quality production.
>
> Safe, skilled, respected workers improve quality. It is in everyone's interest to maintain the uninterrupted service that has allowed Consolidated Graphics to become a leader in the printing industry.
>
> You have spent considerable time and resources to achieve the kind of respect that comes from conducting business with decency and integrity - and you expect the same of your service providers. We strongly urge you to contact Joe R. Davis, Chairman and CEO or other Consolidated Graphics senior management and let them know that you wish to do business with companies that are fair to their employees and place a premium on worker safety. We thank you for your help and support, and we are eager to receive your reply.

(emphasis added). The statements in the letter serve as the predicate for Plaintiff's state law defamation and tortious interference claims.

Upon learning of the existence of the letter, Hennegan sent Defendants a letter on August 28, 2009 demanding that they make a retraction to those customers (Doc. # 12-5). In its letter seeking a retraction, Hennegan requested a response from Defendants by September 2, 2009. When no response was received, Hennegan filed its complaint in Boone Circuit Court on September 3, 2009. After filing the complaint, Hennegan's counsel telephoned an attorney who represented the Union on a number of related issues, and provided him with copies of all of the documents that were filed with the Boone Circuit Court. Hennegan thereafter sought to obtain a temporary restraining order.

The Boone Circuit Court, Senior Judge David Melcher presiding, held a hearing on the motion, asked counsel and representatives of Hennegan several questions regarding the propriety of entering the order, and then issued a Temporary Restraining Order which was served on Defendants the same day (Doc. # 12–6). No representative of Defendants attended the hearing on Hennegan's motion for temporary restraining order.

The temporary restraining order contained only two limitations on Defendants' activities. First, it precluded Defendants from making statements about Hennegan's safety record that they "know or should know to be false." (Id.). Second, the temporary restraining order precluded Defendants from contacting Hennegan's customers "in order to interfere with Plaintiff's business and contractual relationships with said customers." (Id.)

On September 8, 2009, Defendants removed the action to this Court (Doc. # 1) and moved the Court to dissolve the temporary restraining order (Doc. # 2).

4

## III. Discussion

### A. Preemption

A complaint filed in state court is removable, without regard to the citizenship of the parties, if it alleges a claim "aris[ing] under" the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1441(b). Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To be removable based upon federal question jurisdiction, generally the complaint must affirmatively allege a federal claim. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). Federal courts examine the well-pleaded allegations of the complaint for a federal question on its face, and ignore potential defenses, *id.*, "including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. Under this rule, "the plaintiff [is] the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 492. Therefore, federal jurisdiction can therefore generally be avoided by relying exclusively on state law. *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc).

However, one limited exception to this general rule is "when a federal statute wholly displace[s] the state-law cause of action through complete preemption." *Beneficial Nat. Bank*, 539 U.S. at 8. This narrow exception to the well-pleaded complaint rule, otherwise known as the "complete preemption" doctrine, occurs where "Congress [has] so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is

5

necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). The theory behind the doctrine is that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (*quoting Metro. Life*, 481 U.S. at 65).

In their memorandum and at oral argument, Defendants rely upon Section 301 of the Labor Management Relations Act (LMRA) to support removal in this case.[2] Section 301 of the LMRA is one of but a few statutes under which the Supreme Court has recognized complete preemption. *See, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-11 (1985) (*citing Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962); *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists & Aerospace Workers*, 390 U.S. 557, 559-61 (1968) (*citing Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456-57 (1957)).

Section 301 of the LMRA provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The statute serves to preempt state-law claims for what are in actuality suits for violation of contracts between an employer and a labor organization. *Caterpillar*, 482 U.S. at 394. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), the Supreme Court held that when resolution of a state law claim is substantially dependent on an analysis of

---

[2] Although Defendants originally argued that *Garmon* preemption provides a separate basis for federal question removal jurisdiction, they acknowledged during oral argument that *Alongi v. Ford Motor Co.*, 386 F.3d 716, 723 (6th Cir. 2004) has rejected that argument. *See also Boggs v. Appalachian Regional Healthcare, Inc.*, 2008 WL 269057 (E.D. Ky. Jan. 30, 2008) (J. Caldwell).

the terms of a CBA, the claim is preempted and federal labor law applies. *See also Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).

### B.   Section 301 of the LMRA does not Preempt Plaintiff's State Law Tortious Interference and Defamation Claims.

In this case, because Plaintiff's claims are exclusively couched as Kentucky state law claims, the Court's authority to adjudicate the pending motion to dissolve the TRO requires this Court to first determine whether Plaintiff's state law tort claims are completely preempted by the LMRA. In examining this question, the Court recognizes that section 301 preemption has been expanded to include state-law tort claims under certain circumstances. For example, in *Allis-Chalmers v. Lueck,* the Supreme Court held that § 301 preempted a state-law tort claim for bad faith in handling plaintiff's disability claims. The Court's determination turned on the fact that the alleged bad faith was in handling *obligations under a contract for disability benefits included in the employees'* CBA. Because the parameters of the CBA's insurance claim payment requirement and whether it included an implied duty of good faith were matters of federal contract interpretation, the Court ruled that the state tort action was preempted by section 301.  471 U.S. at 215. Preemption was required because the "parties' agreement as to the manner in which a benefit claim would be handled [would] necessarily [have been] relevant to any allegation that the claim was handled in a dilatory manner." *Id.* at 218.

In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court's attention was directed to a state-law retaliatory discharge claim for the employee's pursuit of benefits under the Illinois workers' compensation system.  In *Lingle,* the employee was discharged for filing an allegedly false worker's compensation claim, and

7

then filed a grievance pursuant to the CBA, which protected employees from discharge except for just cause. *Id.* at 401. While the arbitration was pending, the employee filed a civil suit, claiming that she was discharged for asserting her rights under the state worker's compensation laws. *Id.* at 402. Both the proof of and the defense to such a retaliatory discharge claim turned on purely factual questions regarding the conduct of the employee and the motivation of the employer. The Court found that the retaliation claim was independent, and therefore not preempted by § 301 because resolution of the state-law claim did not require construing the CBA. *Id.* at 407.

The Sixth Circuit has reaffirmed this principle stating that:

> Section 301 preempts only state law claims that are substantially dependent on an analysis of a collective bargaining agreement, not claims that only tangentially involve CBA provisions. Furthermore, a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 [complete] preemption.

*Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir. 1990) (internal quotation marks and citations omitted). Furthermore, merely consulting a CBA in the course of adjudicating state law claims is insufficient for § 301 preemption. *Valinski v. Detroit Edison*, 197 Fed.Appx. 403, 409 (6th Cir. 2006) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("the bare fact that a CBA will be consulted in the course of state law litigation plainly does not require the claim to be distinguished")). *Allis-Chalmers* clarified that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301...." and that "it would be inconsistent with congressional intent under [section 301] to preempt state rules that ... establish rights and obligations, independent of a labor contract." *Id.* at 211-12. The Supreme Court

8

emphasized the narrowness of its decision, stating that the "scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.* at 220.

In recognition of this Supreme Court precedent, the Sixth Circuit has adopted a two step approach for determining whether section 301 preemption applies. First, the Court must examine whether proof of the state-law claims requires interpretation of the terms of the CBA. Second, the Court must determine whether the rights claimed by the plaintiff are created by the CBA, or by state law. *Decoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted. *Id.* at 216-17, *see also Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004)

Here, Defendants argue that Plaintiff's state law tortious interference with business relations or contracts and trade libel[3] claims are preempted by § 301 of the LMRA. As the party seeking removal, Defendants carry the burden of establishing Plaintiff's claims are completely preempted. *Valinski v. Detroit Edison*, 197 Fed. Appx. 403, 407 (6th Cir. 2006). Thus, the Court will examine each of the state law claims to determine whether Defendants have satisfied its burden in establishing that these claims are preempted by § 301 of the LMRA.

---

[3] Although the Verified Complaint at Counts III and IV is couched in terms of "trade libel" (Doc. # 2-5 at p. 6), because both parties have construed these counts in their memoranda as sounding in defamation, and the state court would likely allow the Complaint to be amended to include such a claim upon remand, the Court will examine Counts III and IV as suggested by the parties in their memoranda.

### 1.    Tortious Interference

Under Kentucky law, a claim for tortious interference requires a showing of the following four elements: "(1) the existence of a contract; (2) defendant was knowledgeable of the contract; (3) that [defendant] intended to cause breach; and (4) [defendant's] conduct caused the breach." *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D.Ky. 1995).

Looking at the elements of Plaintiff's tortious interference claim, the Court notes that Plaintiff's claim will not require interpretation of the terms of the expired CBA between Plaintiff and the Union.  This claim turns on questions of fact, wholly independent of the CBA.  In its Complaint, Plaintiff does not invoke any portions of the CBA which would affect the existence of Plaintiff's business relationship with its customers, the Union's knowledge thereof, the Union's allegedly intentional interference with those relationships, the Defendants' intent in sending the letter, and whether any customers acted in response to the letter and decided to breach the contracts they had with Plaintiff.   Put simply, Defendants' conduct, and Plaintiff's customers' reaction to the August 17, 2009 letter, can be judged without reference to the expired CBA.  Additionally, none of the elements of Plaintiff's tortious interference claim can be proven by reference to any provisions of the CBA.  When asked at oral argument what portions of the CBA would be utilized to prove Plaintiff's tortious interference claim, Defendants could not identify any such provisions, other than vaguely referencing the CBA's minimum staffing provisions.  However, those provisions have nothing to do with whether Defendants tortiously interfered with Plaintiff's customers by sending them the August 17, 2009 letter.

10

Defendants have also failed to establish that the rights claimed by Plaintiff in its tortious interference claim were created by the expired CBA between itself and the Union. During oral argument, defense counsel acknowledged that this claim arose out of state law versus the CBA itself. By bringing this claim, Plaintiff is simply claiming the right to engage in business relations with its customers without interference from another person or entity, which avoids the second prong of the *DeCoe* § 301 preemption test. The rights Plaintiff seeks to invoke via its tortious interference claim is the state law right to be free of interference in business relationships with its customers, not a right borne of the CBA.

For these reasons, the Court concludes that Plaintiff's tortious interference claim is not preempted by section 301 of the LMRA.

### 2.    Defamation

In Kentucky, the elements of common law defamation are: (1) defamatory language, (2) about the plaintiff, (3) which is published, and (4) causes injury to the plaintiff's reputation. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). When a defamation claim arises out of the context of a labor dispute, as is the case herein, Plaintiff must also prove actual malice. *Gilliam v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 215 S.W.3d 56, 60 (Ky. Ct. App. 2006). Words will be considered defamatory language if they tend to "(1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation." *McCall v. CourierJournal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky 1981), *cert. denied*, 456 U.S. 975. The alleged defamatory publication should be construed as a whole, and the words must be measured by their natural and probable effect on the mind

11

of the average lay recipient. *Id.;* Restatement (Second) Of Torts § 563, cmt. d (1977). Furthermore, the Court must analyze the publication in its entirety to determine whether its gist or sting is defamatory. *McCall,* 623 S.W.2d at 884. Truth is an affirmative defense and complete defense to a defamation claim. *Buchholtz v. Dugan,* 977 S.W.2d 24, 27 (Ky. App. 1998).

Defendants argue that in order to determine the truth or falsity of the Union's August 17, 2009 letter to Plaintiff's customers, the Court will be required to interpret the expired CBA. More specifically, Defendants emphasize that portion of the letter which states that "[i]n bargaining at the Hennegan Company plant, the company has demanded eliminating the staffing provision from the contract." This reference to the "contract," which was identified at oral argument to be the expired CBA, argues Defendants, will require the Court to examine the CBA to determine the validity of the defamation claim.

According to Defendants, the letter's primary focus was on the minimum staffing provisions of the CBA and Hennegan's demand during negotiations that those provisions be eliminated. For that reason, Defendants submit that "[t]here simply is no getting around the fact that a court will have to read the expired agreement to see if there are in fact staffing provisions, and then compare any provisions to the Company's proposals on staffing to see if the company has in fact demanded eliminating the staffing provisions from the contract." In support of their argument, Defendants rely primarily on two Circuit decisions (*Adkins v. General Motors Corp.,* 946 F.2d 1201, 1209 (6th Cir. 1991), and the *Decoe* decision previously referenced, and one Supreme Court case, *International Brotherhood of Electrical Workers v. Hechler,* 481 U.S. 851 (1987). Defendants' reliance

12

on those decisions for complete preemption in this case is misplaced.

In *Adkins*, former employees brought fraud claims against their union and their former employer, alleging that the two entities had colluded together; that the union president had fraudulently induced them to ratify a new CBA, which deprived them of special seniority rights contained in a prior "bridge agreement;" and that the president misrepresented that the seniority rights would continue to be respected. In holding that the fraud claims were preempted, the Sixth Circuit held that the resolution of the fraud claims was substantially dependent on an analysis of the CBA, reasoning that the bridge agreement was the product of collective bargaining, and that the court would be obliged to determine that the "bridge agreement" conferred special seniority rights on the plaintiffs, that the subsequent CBA abrogated those rights, what the president told the plaintiffs, and whether these representations were false, given the court's construction of the agreements. 946 F.2d at 1209. The *Adkins* plaintiffs were existing bargaining unit members, and their claims were based on a misrepresentation of their rights under a new CBA and of the effect of ratification on their seniority rights. Thus, an analysis of the former and new CBA was necessary to determine the rights that actually existed and if they had been misrepresented. Such in depth analysis will not be required herein. Unlike the case in *Atkins*, which involved alleged interference between parties to a CBA, the alleged interference herein was between the Union and Plaintiff's customers, who were admittedly not parties to the expired CBA. Additionally, the resolution of Plaintiff's claims will not be substantially dependent on any analysis of the expired CBA.

*DeCoe v. General Motors Corp.*, in which the Sixth Circuit found § 301 preemption of plaintiffs' claims for slander, tortious interference with economic relations, conspiracy,

and intentional infliction of emotional distress, is distinguishable. In *DeCoe*, the court held that reference must be made to the collective bargaining agreement to determine if the defendants acted outrageously when they filed sexual harassment grievances against the plaintiff. The CBA set forth the means, including internal grievance procedures, for dealing with sexual harassment claims. For that reason, the CBA had to be referenced to determine if the defendants acted outrageously or merely insisted upon their legal rights as set forth in the CBA. Under these facts, the Court found that the *DeCoe* plaintiff's claim was preempted by § 301 of the LMRA. Although Defendant's reliance on *DeCoe* for the controlling two part test is appropriate, it's ultimate finding of preemption is not helpful to Defendants in this case.

In *Hechler*, 481 U.S. at 859- 62, the Supreme Court held that an employee's state law tort suit against her union for breach of the union's duty to provide a safe workplace was preempted because the duty arose from the collective bargaining agreement. The CBA contained provisions on safety and working requirements for electrical apprentices. The Court found that the plaintiff would have to use these provisions to argue that the Union had assumed an implied duty of care, which would in turn require a court to ascertain whether the agreement in fact created an implied duty and the nature and scope of that duty. *Id.* Consequently, the claim was preempted because it involved questions of contract interpretation. Defendants' reliance on *Hechler* for the proposition that "mere examination of the agreement"... "is enough to preempt the claim" reads *Hechler* too broadly. To hold otherwise would convert virtually every state law claim into a federally preempted claim under § 301 whenever a CBA is involved, however slightly.

14

In addition to distinguishing the three primary cases relied upon by Defendants, the Court believes there are two other significant reasons why § 301 preemption is not warranted in this case. First, to the extent Defendants rely on the provisions of the expired CBA to establish the truth of the statements made in the letter, such reliance is misplaced. It is well-settled within the Sixth Circuit that affirmative defenses, such as truth in a defamation action, cannot form the basis for § 301 preemption. *See DeCoe*, 32 F.3d at 216 (defendant's assertion of the CBA as an affirmative defense does not turn an otherwise independent claim into a claim dependent on the labor contract); *Fox*, 914 F.2d at 799-800. As stated by the Supreme Court in *Caterpillar, Inc.*:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule-that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

482 U.S. at 398-99 (*cited in Alongi*, 386 F.3d at 727-28)

During oral argument, Defendants argued that they are not simply utilizing the expired CBA as an affirmative defense to Plaintiff's defamation claim. Rather, because Plaintiff will have to prove actual malice to succeed on its defamation claim, Defendants submit that Plaintiff will have to interpret the expired CBA to sustain its burden of proof. The Court disagrees. Despite Defendant's argument to the contrary, proof of actual malice will not require interpretation of the expired CBA. Although Defendants repeatedly

15

indicated they would need to emphasize or refer to the staffing provisions in the expired CBA in establishing that the August 17, 2009 letter was truthful, Defendant's (as opposed to Plaintiff's) reliance on the CBA's provisions in defense of Plaintiff's defamation claim is not a recognized basis for § 301 preemption. Thus, Defendants' reliance on the terms of the expired CBA to determine truth or falsity of the August 17, 2009 letter cannot provide a basis for removal under § 301 of the LMRA.

Second, Section 301's sphere of complete preemption does not reach claims that only tangentially involve CBA provisions. *See Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (*quoting Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir.1990); *Valinski v. Detroit Edison*, 197 Fed.Appx. 403, 409 (6th Cir. 2006) *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *Hahn v. Rauch*, 602 F. Supp 895, 905 (N.D. Ohio 2008) (merely consulting a CBA in the course of adjudicating state law claims is not enough for § 301 preemption). In recognition of these authorities, which the Court finds persuasive, the fact that Defendants will inevitably point to the staffing provisions of the expired CBA in defense of Plaintiff's defamation action does not compel § 301 preemption in this case. Referring or relying upon such provisions is not tantamount to interpreting the CBA for § 301 preemption purposes. Accordingly, under the first prong of the *DeCoe* test, Plaintiff's defamation claim will not require interpretation of the terms of the expired CBA.

Defendants have also failed to establish that the rights claimed by Plaintiff in its defamation claim were created by the expired CBA between itself and the Union. By bringing this claim in its Complaint, Plaintiff seeks to enforce the state law which prohibits individuals or entities from publishing false and defamatory statements about other people. The defamation right being asserted by Plaintiff in this case is created by Kentucky state

16

law, not the expired CBA. For these reasons, the Court concludes that Defendants have failed to satisfy the second prong of the *DeCoe* test on Plaintiff's defamation claim.

### IV.   Conclusion

For the reasons stated herein, Plaintiff's tortuous interference and defamation claims stemming from Defendant's August 17, 2009 letter are independent of the expired CBA and are not preempted by § 301 of the LMRA. Simply stated, this Court does not have subject matter jurisdiction over Plaintiff's claims, raised exclusively under Kentucky state law. Accordingly,

**IT IS ORDERED as follows:**

(1)   Plaintiff's motion to remand this action to the Boone County Circuit Court be, and is hereby **granted**. This action is **remanded to the Boone Circuit Court**;

(2)   Defendant's Motion to Dissolve the TRO (Doc. # 2) will be **deferred** to the presiding state court judge on remand; and

(3)   This action be, and is hereby **dismissed and stricken from the active docket**.

This 25th day of September, 2009.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-09-155 MOO remanding to state court.wpd